NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>              v.<br><br>GUY JACKSON,<br><br>                    Defendant. | Case No. 3:20-cr-00161 (BRM)<br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Guy Jackson's ("Jackson") Second Motion for Reduction of Sentence pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A) (the "Motion"). (ECF No. 324.) Plaintiff, the United States of America (the "Government"), filed an Opposition to Jackson's Motion. (ECF No. 330.) Jackson filed a Reply. (ECF No. 331.) Having reviewed and considered the parties' submissions filed in connection with the Motion, and having declined to hold oral argument, for the reasons set forth below and for good cause having been shown, Jackson's Motion is **DENIED**.

I.    **BACKGROUND**

On February 18, 2020, Jackson pleaded guilty pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure to a one-count Information, which charged that, from on or about May 2017 through on or about November 2018, Jackson knowingly and intentionally conspired and agreed with others to distribute and possess, with intent to distribute, one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841 and 21 U.S.C. § 846. (ECF No. 287.) On December 3,

2021, the Court imposed a sentence of two-hundred months of imprisonment and five years of supervised release. (ECF No. 302.)

Jackson is fifty-three years old and is currently serving his sentence at FCI Beckley in Beaver, West Virginia. (ECF No. 330 at 7, 9.) He has committed no disciplinary infractions during his time in the custody of the Federal Bureau of Prisons ("BOP") and suffers from several medical conditions including sleep apnea, asthma, obesity, nasal polyps, and deteriorating vision. (*Id.* at 7, 10.) Jackson has declined all offers to receive the COVID-19 vaccine. (*Id.* at 6.) He alleges the BOP has failed to provide sufficient medical care for his medical conditions, and less than half of the inmates at FCI Beckley have received all recommended doses of the COVID-19 vaccine, constituting another threat to his health (*Id.* at 8–10.)

Further, Jackson alleges his wife, Lashawn Mealing ("Mealing"), has severe health issues and requires significant assistance to complete basic day-to-day tasks. (*Id.* at 8–9.) Mealing has been living without Jackson's assistance for over four years and has received help from her mother and Jackson's father. (*Id.*) She has also received limited assistance from a home aide through her insurance. (*Id.*) Jackson's son, Aliem, was recently accepted into the Navy and will begin serving shortly. (*Id.*) Jackson alleges he is the only person who can care for Mealing on the full-time basis she requires because their parents are elderly with health problems, the home aide comes for a few hours per week, and Aliem will soon begin his military service. (*Id.*)

At the time of sentencing, Jackson had a pending state criminal matter. (*Id.* at 4.) The matter was later dismissed upon appeal. (*Id.*)

On March 31, 2023, Jackson filed his First Motion for Reduction of Sentence. (ECF No. 308.) On May 1, 2023, the Government opposed the motion. (ECF No. 311.) On May 18, 2023,

Jackson filed a reply. (ECF No. 312.) On August 30, 2023, this Court denied Jackson's first motion. (ECF No. 319.)

On January 12, 2026, Jackson filed his Second Motion for Reduction of Sentence. (ECF No. 324.) On March 27, 2026, the Government opposed the motion. (ECF No. 330.) On April 10, 2026, Jackson filed a Reply. (ECF No. 331.)

## II.   LEGAL STANDARD

A district court may modify a sentence of imprisonment only in "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). One such circumstance is compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The statute, as amended by the First Step Act of 2018, allows a motion for such relief to be brought by either the Director of the BOP or by defendants after exhausting their administrative remedies. 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). A court may reduce a sentence if the court finds the following: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2) the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate reducing the sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A).

The United States Sentencing Commission has promulgated a policy statement (the "Policy Statement"), allowing, in relevant part, a court to grant compassionate release or a sentence reduction upon a finding of (i) "extraordinary and compelling reasons"; (ii) "the defendant is not a danger to the safety of others or to the community"; and (iii) "release from custody complies with the Section 3553(a) factors, to the extent applicable." *United States v. Williams*, Crim. A. No. 17-0379, 2021 WL 37536, at *2 (D.N.J. Jan. 4, 2021) (citing U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sentencing Comm'n 2018)).

Neither § 3582(c)(1)(A) nor the Policy Statement define the key terms "extraordinary and compelling," which "provid[es] courts with some flexibility and discretion to consider the unique circumstances of a motion for compassionate release." *United States v. Batista*, Crim. A. No. 18-415, 2020 WL 4500044, at *2 (D.N.J. Aug. 5, 2020). The Sentencing Commission has defined the term "under the previous version of section 3582(c)(1)(A)," but it has not "updated its Policy Statement since the passage of the First Step Act." *United States v. Alexander*, Crim. A. No. 19-32, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D.P.A. 2020)). Nevertheless, "the present Policy Statement provides useful guidance for district courts in identifying extraordinary and compelling reasons for a defendant's eligibility for compassionate release." *United States v. Gwaltney*, Crim. A. No. 17-00381, 2020 WL 5983161, at *2 (D.N.J. Oct. 8, 2020).

The Policy Statement provides "a defendant may demonstrate extraordinary and compelling reasons for compassionate release based on: (1) the medical condition of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; or (4) for 'other reasons.'" *Id.* (citing U.S.S.G. § 1B1.13 cmt. n.1). The defendant's "[m]edical [c]ondition," constitutes an extraordinary and compelling reason when:

> (i) The defendant is suffering from a terminal illness . . . ; [or]
> (ii) The defendant is—
>> (I) suffering from a serious physical or medical condition,
>> (II) suffering from a serious functional or cognitive impairment, or
>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A).

"Compassionate release is discretionary, not mandatory; even if a defendant is eligible, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Parnell*, No. 21-2312, 2022 WL 73754, at *1 (3d Cir. Jan. 7, 2022).

## III.   DECISION

### A.   Exhaustion of Remedies

The Government does not dispute Defendant satisfied the statutory exhaustion requirement.[1] (ECF No. 330 at 13.) The Court, therefore, considers whether (1) "extraordinary and compelling reasons" warrant a sentence reduction; and (2) "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

### B.   "Extraordinary and Compelling Reasons" and the Policy Statement

#### 1.   Jackson has Not Identified a Terminal Illness

Defendant has not identified a "terminal illness" under the Policy Statement. U.S.S.G. § 1B1.13 cmt. n.1(A)(i).[2] A "terminal illness" that constitutes an extraordinary and compelling reason for release means "a serious and advanced illness with an end of life trajectory," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Here, Defendant has not made such a showing.

---

[1] Section 3582(c)(1)(A) provides a court entertains a motion for compassionate release only "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *See United States v. Epstein*, Crim. A. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (emphasis omitted) (quoting 18 U.S.C. § 3582(c)).

[2] The Sentencing Commission's Policy Statement found in application note 1(A)(ii) to U.S.S.G. § 1B1.13, while not binding on this Court, may be considered by the Court in its "extraordinary and compelling" analysis. *United States v. Jefferson*, No. 21-2020, 2021 WL 4279626, at *2 (3d Cir. Sep. 21, 2021) (quoting *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021)).

### 2.      Jackson's Medical Conditions

Jackson argues his health condition as he ages, combined with other factors, constitutes "extraordinary and compelling" reasons. (ECF  No. 324 at 16.) He asserts he suffers from a heart condition, exacerbated by his obesity, in addition to deteriorating vision, nasal polyps, asthma, and sleep apnea requiring the use of a CPAP machine. (*Id.*) Jackson further argues the Pandemic remains a concern for him because, in addition to the low vaccination rate among the prison population, he has endured periods of lockdown comparable to other facilities where courts considered the conditions in the facility as a basis for compassionate release. (*Id.*)

Courts consistently consider two components when inquiring about the existence of extraordinary and compelling reasons: "(a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, Crim. A. No. 19-101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

The Third Circuit has held "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597. The mere presence of COVID-19 in a prison does not entitle every offender with a medical condition to compassionate release. *See*, *e.g.*, *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020).

Accordingly, "[f]or the prisoner's health to count as an extraordinary and compelling reason," Jackson must overcome a "high bar." *United States v. Estevez-Ulloa*, No. 21-2432, 2022 WL 1165771, at *1 (3d Cir. Apr. 20, 2022). Most importantly, the Third Circuit concluded "with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not

incarcerated." *Id.* at *2 (quoting *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021)). Therefore, against the backdrop of Jackson's access to the COVID-19 vaccine, his refusal of the COVID-19 vaccine "undermines any claim that his risk of contracting the virus justifie[s] relief." *United States v. Rene*, No. 22-1642, 2022 WL 1793023, at *1 (3d Cir. June 2, 2022).

Sleep apnea is not listed as a risk factor for COVID-19 by the Centers for Disease Control and Prevention ("CDC"). *See* CDC, *People with Certain Medical Conditions*, https://perma.cc/4PZA-M9UV (last updated June 11, 2025) (last visited May 27, 2026). However, "[a]sthma, if moderate or severe, is among the medical conditions that the [CDC] . . . list[s] as presenting an increased risk of severe illness from a COVID-19 infection." *United States v. Alston*, Crim. A. No. 03-844, 2023 WL 2238297, at *4 (D.N.J. Feb. 27, 2023) (citing CDC, *People with Certain Medical Conditions*, https://perma.cc/4PZA-M9UV). Obesity (a body mass index greater than 30) is also listed as a condition that could increase the risk of an individual for severe COVID-19-related complications. CDC, *People with Certain Medical Conditions*, https://perma.cc/4PZA-M9UV. However, "having a listed condition does not automatically satisfy the standard in the [P]olicy [S]tatement." *Alston*, 2023 WL 2238297, at *4. Both asthma and obesity have been frequently rejected as a basis for satisfying the standard. *See, e.g., id.*; *United States v. Hernandez*, No. 06-736-5, 2022 WL 17820248, at *3 (D.N.J. Dec. 19, 2022); *United States v. McNair*, 481 F. Supp. 3d 362, 369–70 (D.N.J. 2020); *United States v. Zaffa*, Crim. No. No. 14-050-4, 2020 WL 3542304, at *2–4 (D.N.J. June 29, 2020); *United States v. Munoz*, Crim. A. No. 15-324, 2020 WL 7074351, at *3 (D.N.J. Dec. 3, 2020); *United States v. Preschel*, Crim. A. No. 19-186, 2021 WL 3930716, at *3 (D.N.J. Sept. 2, 2021). Notably, Jackson has refused to receive the COVID-19 vaccine. (ECF No. 330 at 6.)

Courts have also frequently rejected lockdowns due to COVID-19 as a basis for satisfying

the standard. *See, e.g.*, *United States v. Ali*, Crim. A. No. 11-0752, 2022 WL 3357915, at *4 (D.N.J. Aug. 15, 2022) ("Separately, the fact . . . Defendant has experienced strict lockdowns because of COVID-19 is not a reason that justifies compassionate release."); *United States v. Wright*, 569 F. Supp. 3d 158, 161–62 (W.D.N.Y. 2021) (denying compassionate release to movant with obesity, high blood pressure and seizures who had been under extended lockdown due to the pandemic); *United States v. Hall*, Crim. A. No. 04-0323, 2022 WL 2105975, at *2 (D. Md. June 10, 2022) (rejecting inmate's argument  the "persistent lockdowns" due to COVID-19 were extraordinary and compelling circumstances after separately finding he had not sufficiently alleged extraordinary medical circumstances). Jackson's argument for release based upon his facility's lockdowns is not persuasive.

Jackson's reliance on *United States v. Ali* is also misplaced. In *Ali*, the court granted compassionate release to an inmate who was sixty-three years old, would not be released until he was almost eighty, and suffered from severe back pain and muscle weakness that required surgery and left him temporarily unable to walk, no muscle mass, and weakness in his left arm. *United States v. Ali*, 738 F. Supp. 3d 584, 590 (E.D. Pa. 2024). The inmate in *Ali* also had contracted COVID-19 at least twice, despite receiving the vaccine, exacerbated by his thyroid disease and high blood pressure. (*Id.*) The court found Ali's medical condition did not rise to the level of extraordinary and compelling circumstances, but noted his age, conditions, and length left of his sentence meant he was feasibly facing a life sentence. (*Id.* at 591.) Instead, the court granted compassionate release on the grounds that Ali's original mandatory minimum sentence of thirty-two years for three robberies, including one where he brandished a handgun, was an extraordinarily long sentence combined with changes in the sentencing laws calling for a mandatory minimum of fourteen years at the time the opinion was issued. (*Id.* at 597.)

This is legally distinct from the argument set forth in Jackson's motion, which is not based upon an extraordinarily long sentence or subsequent change to sentencing laws. To the extent the feasibility of a defendant's sentence becoming a life sentence due to his medical condition factored into the *Ali* court's analysis, Jackson presents a factually distinct record as well. Jackson is fifty-three and, with good time credit, has almost six years left to serve. (ECF No. 330 at 22.) He will be approximately sixty when he is released, unlike Ali who would have been almost 80. (*See id.*) He has not alleged he has contracted COVID-19, despite not receiving the vaccine. (ECF No. 330 at 6.) He has not alleged medical conditions to the severity of the inability to walk after surgery. (*Id.*)

Accordingly, the Court finds Jackson has not shown his medical conditions create an extraordinary and compelling reason for his compassionate release, in part, because his refusal of the COVID-19 vaccine "undermines any claim that his risk of contracting the virus justifie[s] relief." *Rene*, 2022 WL 1793023, at *1.

### 3.     Jackson's Family Circumstances

Jackson argues that extraordinary and compelling reasons exist to justify his release because Mealing requires significant assistance to complete even the most basic day-to-day tasks and no one besides Jackson can provide the care she needs. (ECF No. 324 at 9.)

Although not determinative, the current guidance by the Sentencing Commission as incorporated by § 3582(c) is instructive. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) ("The court correctly recognized that although the [P]olicy [S]tatement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons."). The comments to the Policy Statement, U.S.S.G. § 1B1.13, state in reducing a sentence the court may consider the defendant's "family circumstances," that is, whether there is "incapacitation of the caregiver of the

defendant's minor child" or the "incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver for the spouse." *Id.* § 1B1.13 cmt. 1(C)(i)–(ii).

Here, Jackson has not shown he is the only available caregiver for a family member because he alleges his father, Mealing's mother, and a home health aide have been assisting Mealing since the denial of his First Motion for Reduction of Sentence. (ECF No. 324 at 9.) Nor does the need to care for elderly or ill family members generally rise to the level of an extraordinary and compelling circumstance warranting release. *United States v. Siberio-Rivera*, Crim. A. No. 17-00320-6, 2020 WL 7353367, at *1 (E.D. Pa. Dec. 15, 2020) (quoting *United States v. Moore*, Crim. A. No. 14-209-2, 2020 WL 7024245, at *5 (E.D. Pa. Nov. 30, 2020)); *see also United States v. Canzater*, Crim. A. No. 18-578, 2022 WL 1602163, at *10 (D.N.J. May 20, 2022) (finding an insufficient basis for compassionate release where the defendant had not established his constant presence was required to care for his ailing mother or that no other arrangements were available). Jackson's Second Motion includes a new letter from Mealing's doctor containing materially similar information from his First Motion. (ECF No. 324, Ex. G; ECF No. 308, Ex. I.) The Court considered Mealing's poor health at her sentencing and found a special condition of twenty-four months of home detention would be sufficient. The Court later reduced this special condition to merely a curfew to further accommodate her health issues. She has continued without Jackson's care for the entirety of his period of incarceration. Her mother, Jackson's father, and a home health aide have been participants in her care. Jackson's Reply included a new letter from Mealing's doctor and certification from Mealing reiterating she is relatively immobile in her home and can only walk with assistance, and her mother and Jackson's father are elderly with their own infirmities and can no longer meaningfully help her. (ECF No. 331, Ex. A, B.) She further certifies there is no one else to care for her full time. (*Id.*) To be sure, the Court appreciates the difficulties

Mealing faces but notes limited ambulation and limited caregiving, however imperfect, do not rise to the level of an extraordinary and compelling circumstance. Accordingly, Jackson's family circumstances do not present an extraordinary and compelling reason for his compassionate release.

### C.    Section 3553(a) Factors

Even if the Court were to find extraordinary and compelling reasons were present, Jackson has not demonstrated early release would be appropriate under § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

Jackson renews and bolsters his arguments that he has undergone "extraordinary post-arrest rehabilitation," including: working as an orderly; previously working as a chef; obtaining a Commercial Driver's License; becoming OSHA certified in both 2023 and 2025; completing a forklift class and obtaining his Operator Driving Certificate; taking additional classes such as Self-Study Post-Release Prep, Self-Study Job Search Skills, Self-Study Pre-Release Prep, SHU ACE GED Thinking Skills 2, Pre 1800 History, and Finding a Job When You Have a Record. (ECF No. 324 at 5–6.) He also claims he has served a significant portion of his sentence despite serving less than half of his 200-month sentence. (*Id.* at 2.) Finally, he argues his state criminal matter, which was pending at the time of his sentencing, was dismissed in full on appeal and should merit consideration in his motion for reduction of his sentence because this Court weighed the nature and circumstances of the unresolved charge at sentencing. (*Id.* at 15.)

The Government counters that the nature and circumstances of the offense and the inherent seriousness of the offense still do not warrant relief. (ECF No. 330 at 21–23.) The Government further argues the facts underlying Jackson's then-pending state criminal matter were relevant at

sentencing and remain relevant here. (*Id.* at 19.) The Court agrees with the Government and concludes the Section 3553(a) factors favor continued confinement.

The Court again applauds Jackson's significant efforts to better himself while incarcerated and encourages him to persist in those efforts. Nonetheless, the Court finds the applicable sentencing factors under Section 3553(a) do not weigh in favor of granting Jackson's motion for compassionate release and reducing his sentence.

The Court agrees with the Government that the nature and circumstances of Jackson's offense are serious. Jackson pleaded guilty to conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin. The Court concludes Jackson's serious offense requires "a significant period of incarceration," *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020), and the Court's conclusion remains the same as when the Court sentenced Jackson. *See United States v. Moore*, Crim. A. No. 19-101, 2020 WL 4282747, at *8 (D.N.J. July 27, 2020) (denying compassionate release based on section 3553(a) factors although defendant only had four months remaining on sentence). Jackson has only served approximately eight years of his sixteen-year-and-eight-month sentence.

The commentary to § 6A1.3 provides, in pertinent part: "In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial." *United States v. Miele*, 989 F.2d 659, 665 n.6 (3d Cir. 1993) (citing U.S.S.G. § 6A1.3 cmt. n.1); *see also United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011) ("In deciding upon a sentence, a district court has the discretion to rely on the wide array of facts before it, including information set forth in the pre-sentence report, as well as evidence that would not be admissible at trial, so long as the defendant is given an opportunity to contest the accuracy of that information."). Jackson admitted under oath

to the commission of the underlying crime in his state case and he signed a "C-plea" with the Government, after which the state agreed not to seek a consecutive sentence. (ECF No. 324 at 19.) His state matter was dismissed after the search that led to the discovery of the evidence against him was found unconstitutional, and the evidence was therefore suppressed. (*Id.*) This Court is not constrained by what evidence would have been admissible in the state prosecution. While under indictment, Jackson admitted to continuing to distribute controlled substances. His conduct informed the parties' agreement to the "C-plea." The dismissal of the state prosecution due to police error does not mitigate this Court's prior analysis of the need for specific deterrence at Jackson's sentencing.

Accordingly, because Jackson has failed to demonstrate the applicable sentencing factors under § 3553(a) indicate reducing his sentence would be appropriate, the Motion is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, Jackson's Motion is **DENIED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  May 27, 2026